**Harold G. NABHAN, Violet A. Nabhan, and Mabel B. Amos, as they are partners of A.G. Nabhan Company, Plaintiffs,**

v.

**NATIONAL CON–SERV, INC., and Federal Emergency Management Agency, Defendants.**

**No. Civ.A. 96–10866–MLW.**

United States District Court, D. Massachusetts.

April 3, 1998.

David Berman, Berman & Moren, Medford, MA, for Harold G. Nabhan, Violet A. Nabhan, Mabal T. Amos, partners of A.G. Nabhan Co.

Rayford A. Farquhar, U.S. Atty., Boston, MA, Sara M. Bloom, U.S. Attorney's Office, Boston, MA, for National Conserve, Inc.

Rayford A. Farquhar, Sara M. Bloom, Jordan S. Fried, Office of the Gen. Counsel, Federal Emergency Management Agency, Washington, DC, Sara M. Bloom, U.S. Attorney's Office, Boston, MA, for Federal Emergency Management Agency.

### MEMORANDUM AND ORDER ON DEFENDANT'S (SIC) MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (# 3)

COLLINGS, United States Magistrate Judge.

#### I.  Introduction

On or about February 9, 1996, the plaintiffs, Harold G. Nabhan, Violet A. Nabhan, and Mabel T. Amos, as they are partners of A.G. Nabhan Company (collectively "Nabhan"), filed a complaint in state court against defendants National Con–Serv, Inc. ("NCSI") and Federal Emergency Management Agency ("FEMA"). In April, 1996, the complaint was amended and, thereafter, in

the following month, May of 1996, the action was removed to the federal court.

In this suit, Nabhan is seeking to recover monies allegedly due and owing on an insurance policy issued under the National Flood Insurance Program ("NFIP"). The plaintiffs contend that they suffered a flood loss for which they were insured under the policy, but that the defendants, in breach of the contract, have refused to compensate them for their loss.

After removing the case from state court, the defendants filed the instant motion to dismiss or, in the alternative, for summary judgment. It is first argued that the court has no subject matter jurisdiction over the case because it was not filed within one year of the denial of the plaintiffs' claim as mandated by the controlling statute, 42 U.S.C. § 4072. Next, the defendants assert that the plaintiffs' claim is barred consequent to their failure to file a proof of loss as required by the terms of the insurance policy as well as the applicable regulations. Third, it is alleged that NCSI is not a proper party under the FEMA statutory framework, and also because the corporation was not a party to the insurance contract. Finally, the defendants maintain that the court has no subject matter jurisdiction over the plaintiffs' tort claims both because they are not sanctioned under the NFIP and also because the plaintiffs did not follow the procedural requirements necessary to file a claim under the Federal Tort Claims Act.

Nabhan submitted opposition materials to the defendants' dispositive motion, including a Rule 56(f) affidavit from counsel. After the Court permitted certain discovery to be taken pursuant to Rule 56(f), Fed.R.Civ.P., further memoranda and affidavits were filed, and oral argument on the motion was heard. At this juncture, the record is complete and the dispositive motion is in a posture for decision.[1]

## II. The Facts

On or about January 12, 1994, Nabhan was a named insured on a standard policy of insurance, number 2-0273-1594-0 ("the policy"), issued by NCSI under contract with FEMA and in accordance with NFIP. (Defendants' Memorandum # 4 at 2; Opposition of Plaintiffs # 9 at 2) The policy insured against flood damage.[2] FEMA was the insurer; NCSI was not a party to the contract.[3]

A notice of loss was received by NFIP on or about January 25, 1995, with respect to a loss experienced by Nabhan on January 4, 1994.[4] (Amended Declaration of James S.P. Shortley # 21, ¶ 4 and Exh. C) C.B. Adjustment Co. ("C.B."), an independent adjuster, was assigned to investigate the claim. (# 21, ¶ 5) Mr. Chris Place on behalf of C.B. was in contact with the plaintiffs' public adjuster on or about May 11, 1994, sending along a proof of loss for the plaintiffs to sign. (# 21, ¶ 5 and Exh. B) At that time the proof of loss was certified to be $38,115.00, although there was some as yet unverified damages to a number of pilings which could amount to approximately $18,000.00. (*Id.*)

Thereafter by letter dated June 1, 1994, the plaintiffs were notified that in accordance with Condition I of the flood insurance policy, a proof of loss including a sworn, signed statement as to the amount claimed to be due under the policy was to be filed within 60

1. With the parties' consent, this case has been referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

2. Although the plaintiffs state that the policy is attached to the complaint, at the present time it appears to be missing. However, there is no dispute that the policy at issue was a standard flood insurance policy, the terms of which are set out at 44 C.F.R. Pt. 61, App.(A)(2) (Oct. 1992). The 1992 regulations rather than the 1996 regulations are referenced because they were in force at the time of the events in this case and, therefore, are applicable.

3. The defendants state this latter proposition as a fact, and the plaintiffs have not questioned it. Absent a copy of the actual insurance policy to verify the information (see footnote 2), reliance is placed upon the defendants' assertion.

4. In the complaint and throughout their papers, the plaintiffs contend that the date of loss was January 12, 1994. While there is a discrepancy about the date, it is not a material fact in that it does not effect the analysis or outcome in this case.

days of the loss, but that, to date, it had not been received at NFIP. (# 21, ¶ 6 and Exh. E) The failure to file the proof of loss was noted to be a breach of the policy conditions that could potentially impair the insurer's ability to investigate the claim and, consequently, NCSI under contract with FEMA explicitly reserved the insurer's rights under the policy with respect to the investigation and adjustment of the plaintiff's claim. (*Id.*)

About two months later, on or about August 3, 1994, the following letter was send to the plaintiffs by NCSI as servicing agent for NFIP:

Dear Policyholder:

According to Article VIII General Conditions and Provisions Paragraph I, Requirements in Case of Loss, "Should a flood loss occur to your insured property, you must: 3. Within 60 days after the loss send us a Proof of Loss."

Since you have not filed a proof of loss within 60 days as required by the policy and have failed to provide documentation supporting your claim, we must respectfully deny your claim and close our file without payment.

You have one (1) year from the date of this denial to file suit in the U.S. District Court for the district in which the insured property was located at the time of loss.

Waiving none, but reserving all rights and defenses under our policy, we remain,

Sincerely,

/s/

D.L. Marks

Claims Examiner

NFIP Servicing Agent

/s/

S.E. Woods

Claims Supervisor

NFIP Servicing Agent

Amended Declaration of James S.P. Shortley # 21, ¶ 8 and Exh. G. Five days thereafter, on or about August 8, 1994, NFIP received a proof of loss form signed by Harold G. Nabhan, Partner, on July 19, 1994, certifying damages after deductibles in the amount of $38,115.37. (# 21, ¶ 9 and Exh. I) A check in that amount was issued to Nabhan by the NFIP on August 18, 1994. (# 21, ¶ 9 and Exh. I)

At some later point the plaintiffs submitted additional information with respect to purported losses in an attempt to supplement their claim, although no supplemental proof of loss certifying those further losses was ever filed. (# 21, ¶ 10) An offer of $7,617.24 based upon the actual cost of repair was made to, but rejected by, the plaintiffs. (# 9 at 3, ¶ 4; # 21, ¶ 10 and Exh. J) No written waiver or extension of the August 3, 1994 claim denial letter was ever issued by FEMA or the Federal Insurance Administrator. (# 21, ¶ 10) The plaintiffs filed suit in February of 1996 seeking the amount of the alleged supplemental losses incurred in January, 1994.

## III. The Summary Judgment Standard

The summary judgment standard in this Circuit is familiar. When considering the propriety of the entry of summary judgment, the court must determine whether:

... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In making this assessment, the court is to examine the materials presented "in the light most favorable to the nonmoving party and indulge in all inferences in that party's favor." *Moody v. Boston and Maine Corporation,* 921 F.2d 1, 5 (1st Cir.1990) (citation omitted); *Casas Office Machines Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668, 684 (1st Cir.1994).

A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine" the court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.; see also National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995);

*Vasapolli v. Rostoff,* 39 F.3d 27, 32 (1st Cir. 1994). In weighing whether a factual dispute is "material" the court must examine the substantive law of the case, for "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248; *National Amusements,* 43 F.3d at 735; *Vasapolli,* 39 F.3d at 32.

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. Rather, as stated by the Supreme Court:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also National Amusements,* 43 F.3d at 735.

## IV. DISCUSSION

There is no apparent dispute between the parties with respect to the fact that federal law is controlling in this case given that the claims arise under the NFIP. *See, e.g., Phelps v. FEMA,* 785 F.2d 13, 16 n. 2 (1st Cir.1986). The parties also agree that the applicable statutory provision setting forth the time within which suit must be instituted to challenge the denial of a flood insurance claim reads in pertinent part as follows:

> [U]pon the disallowance by the Director of any such [flood insurance] claim, or upon refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of a notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action

without regard to the amount in controversy.

Title 42 U.S.C. § 4072.

A comparable limitations provision is incorporated into both the regulations and the standard flood insurance policy itself. *See,* 44 C.F.R. § 62.22(a) (1992) ("Upon the disallowance by the Federal insurance Administration or the servicing agent of any claim on grounds other than failure to file a proof of loss, or upon the refusal of the claimant to accept the amount allowed upon any such claim, after appraisal pursuant to policy provisions, the claimant within one year after the date of mailing by the Federal Insurance Administration or the servicing agent of the notice of disallowance of the claim may, pursuant to 42 U.S.C. § 4072, institute an action against the Federal Insurance Administrator in the U.S. District Court for the district in which the insured property or the major portion thereof shall have been situated, without regard to the amount in controversy.") and 44 C.F.R. Part 61, App. A(2), art. VII ¶ U (1992).("No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after the date of mailing of notice of disallowance or partial disallowance of the claim.") The threshold difference between the parties is their variant views as to when the limitations period commenced in this case.

The defendants take the position that under the statute, the regulations and the policy itself, the limitations period for filing suit on the facts of this case began to run on or about August 3, 1994, the date the letter from the NFIP was sent to the plaintiffs denying their claim and advising them of their right to sue within one year. Plaintiffs contend that the time period within which to file suit did not accrue until July of 1995 when the offer of $7,617 .24 was made and rejected. According to Nabhan, this offer was a "partial disallowance" of the total amount of the claim sought.

The plaintiffs' interpretation of the limitations provision strains its plain meaning.

There was no mailing of notice of partial disallowance in July, 1995; the sole mailing of notice of denial or partial disallowance, the triggering act under the statute, was by letter dated August 3, 1994. In the text of that notice, the plaintiffs were advised of the requirement to file suit within one year of the letter if they intended to contest the decision. Commencing litigation in February, 1996, is well beyond the permissible temporal parameters; this suit quite simply is not timely.

■ For present purposes, the filing of a timely lawsuit is a prerequisite to falling within the scope of the limited waiver of sovereign immunity found in 42 U.S.C. § 4072. Having failed to meet the condition precedent to the waiver in the statute, the plaintiffs' claims are barred by the doctrine of sovereign immunity. *See, e.g., State Bank of Coloma v. National Flood Insurance Program,* 851 F.2d 817, 818–20 (6th Cir.1988); *Wagner v. Director, Federal Emergency Management Agency,* 847 F.2d 515, 517–18 and 520–21 (9th Cir.1988).

■ The plaintiffs' argument that the limitations clock was reset by the defendants' reconsideration of the claim and subsequent offer of settlement is not persuasive. The uncontested facts reveal that neither the Federal Insurance Administrator nor FEMA ever issued any written waiver or extension of the limitations period. As explained by the Ninth Circuit:

> Once FEMA has triggered the statute of limitations by issuing a denial, reconsideration of the denial or responding to further inquiries about the case has no effect on the running of the limitations period. Only where the Federal Insurance Administrator expressly and in writing sets aside the previous disallowance of a plaintiffs claim does a new limitations period commence upon a subsequent denial of the claim. *See* SFIP, art. VIII, ¶ D (provisions may only be waived with "the express written consent of the Federal Insurance Administrator").

*Wagner,* 847 F.2d at 521; *see also,* 44 C.F.R. Pt. 61, App. A(2), art. VII ¶ D (1992) ("No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto.")

In short, the clock began to run on the plaintiffs' claims in August, 1994 and the limitations period expired one year thereafter, in August of 1995.

■ To the extent that there is any question with respect to Nabhan's failure to comply with the statutory limitations provision, it is clear that the plaintiffs' amended complaint must be dismissed for an equally compelling reason: no proof of loss was ever filed with respect to the amount of damages now sought to be recovered. As earlier quoted, the SFIP provides that no action may be filed "unless all the requirements of the policy shall have been complied with ..." 44 C.F.R. § 61 App. A(2), art. VII ¶ U (1992). It is mandated by the terms of the policy that a proof of loss be filed with the insurer within sixty days after the loss has occurred.

A proof of loss is to be distinguished from an notice of loss [5]; it represents a sworn statement, signed by the insured, of the amount of damage suffered and sought to be recovered. Although in his first affidavit Mr. Nabhan avers that "a proof of loss was filed within sixty days, and Defendants' claim examiner acknowledged it" (Affidavit in Opposition # 10, ¶ 2), the referenced documents make clear that a notice of loss was filed within sixty days, not a proof of loss. Indeed, Mr. Nabhan himself appears to acknowledge the difference in his supplemental affidavit. (Supplemental Affidavit # 28, ¶ 2) A proof of loss was filed, albeit late, with regard to the $38,115.37 claim arising out of the January, 1994 occurrence, and that claim was paid. Thereafter, although supplemental sums were requested for repairs to the pilings, it is undisputed that no proof of loss was ever submitted in support of these additional amounts. This failure to file a proof of loss is fatal to the plaintiffs' claims. *See Wagner,* 847 F.2d at 518–20; *Phelps,* 785 F.2d at 16; *Rockland Federal Credit Union v. Witt,* 853 F.Supp. 14, 20–1 (D.Mass. 1994).

**5.** A notice of loss is to be filed "as soon as practicable" so as to notify FEMA that a loss has been sustained. 44 C.F.R. Pt. 61, App. (A)(2), art. VII ¶ P1 (1992).

Although the plaintiffs rely on the decision *Reeves v. Guiffrida,* 756 F.2d 1141 (5th Cir. 1985) to argue that their claims should not be dismissed, the *Reeves* court in turn relied on the decision in *Meister Bros. v. Macy,* 674 F.2d 1174 (7th Cir.1982), the reasoning of which the First Circuit has specifically disavowed. *Phelps,* 785 F.2d at 17.

In his supplemental affidavit, Mr. Nabhan seems to be laying the foundation for an equitable estoppel argument, suggesting that in his experience FEMA always furnishes the proof of loss for the insured's signature via an independent adjuster and, if no proof of loss was filed within sixty days with respect to the loss at issue, it is because the adjuster did not furnish it. (# 28, ¶¶ 3–4) Mr. Nabhan also asserts that, again in his experience, FEMA never treated a letter such as the August, 1994 letter as a final denial. (# 28, ¶ 5)

The First Circuit has had occasion to write:

> Equitable estoppel is a judicially-devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or defense, regardless of its substantive validity.

＊　　＊　　＊　　＊　　＊　　＊

> The Supreme Court, however, from its early decision in *Lee v. Munroe,* 11 U.S. (7 Cranch) 366, 3 L.Ed. 373 (1813), to its most recent decision in *Heckler v. Community Health Services of Crawford County, Inc.,* [467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) ] has consistently refused to apply the equitable estoppel doctrine against the government, no matter how compelling the circumstances.

*Phelps,* 785 F.2d at 16–17 (footnote omitted); *Wagner,* 847 F.2d 515–20; *Moyer v. Director Of The Federal Emergency Management Agency,* 721 F.Supp. 235, 236–38 (D.Ariz. 1989); *Goldman v. Witt,* 1994 WL 905577 (D.N.J., Dec. 6, 1994).

■ This same principle was most recently reiterated in January in the case of *Frillz, Inc. v. Lader,* 104 F.3d 515, 518 (1st Cir. 1997). ("The doctrine of equitable estoppel in its traditional incarnation does not apply against the federal government.") In the face of this caselaw, particularly given that there is no allegation of misrepresentation or fraud as there was in *Phelps,* the plaintiffs' contention that FEMA is estopped from relying on the fact that no proof of loss was filed is without merit.

No further arguments need be addressed. The defendants are entitled to the entry of judgment in their favor as a matter of law.

### V.　Conclusion and Order

For the reasons stated, it is ORDERED that the Defendant's (sic) Motion To Dismiss Or, In The Alternative, For Summary Judgment (# 3) be, and the same hereby is, ALLOWED. Judgment shall enter for the defendants.