John W. PETERSEN, Jr.,
et al., Plaintiffs,

v.

NATIONAL FLOOD INSURANCE
PROGRAM, Defendant.

No. 01–CV–3376.

United States District Court,
E.D. Pennsylvania.

May 13, 2002.

Allison C. Snyder, Levin Legal Group, PC, Huntingdon Valley, PA, for plaintiffs.

Susan Dein Bricklin, U.S. Atty. Office, Philadelphia, PA, Margaret M. Bees, Office of General Counsel, Washington, DC, for defendants.

## *MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

Plaintiffs, John and Anna Petersen ("plaintiffs" or "Petersens"), instituted this action against the National Flood Insurance Program ("defendant" or "NFIP"), to recover under their Standard Flood Insurance Policy ("SFIP") issued by the Federal Emergency Management Agency ("FEMA"), the organization charged with administering the NFIP. The Petersens filed their complaint on July 5, 2001. After securing several extensions of time to respond to plaintiffs' complaint, the defendant filed a motion to dismiss, or in the alternative, for summary judgment on October 18, 2001.[1] NFIP contends this court

---

1. Defendant subsequently realized that the motion submitted to the court was missing

lacks jurisdiction over the case and plaintiffs failed to state a claim on which relief can be granted as they did not comply with the recovery provisions of the SFIP by filing a proof of loss.[2] On December 5, 2001, plaintiffs filed a memorandum of law in response to the motion to dismiss and defendant filed a reply on December 18, 2001. Before me now is defendant's motion to dismiss, or in the alternative, for summary judgment.

*Statutory and Factual Background* [3]

Congress established the NFIP in 1968 to provide flood insurance at or below actuarial rates. FEMA has operated the program since 1979, and currently does so through the activities of the Federal Insurance Administration. Plaintiffs held a SFIP, purchased through their insurance agent Watson Insurance Associates, effective for the period from September 29, 1998 through September 29, 1999 and issued by FEMA for their property located at 4 Malitia Way, Ft. Washington, Pennsylvania. Plaintiffs regularly purchased flood insurance since 1983, as their home lies in a flood plain. On the policy relevant to this case, the Petersens chose coverage limits of $145,200 for the building, their residence, and $11,600 for its contents, each with a $1000 deductible.

On September 16, 1999, Hurricane Floyd dropped several inches of rain on Southeastern Pennsylvania in just a few hours. The Wissahickon Creek, located behind the Petersens' home, overflowed its banks and reached their residence. The waters soaked the house, a one level structure with a basement, filling the basement and reaching heights of at least forty-one inches on the first floor. Though the first level dried out as the rain subsided, the basement remained flooded, until pumped dry two days later. On the day of the storm, the Petersens notified their insurance agent, who in turn, reported the claim to NFIP. The following day, NFIP sent plaintiffs a letter, indicating that they had assigned Charter Adjustment Company to determine if the policy covered the loss and to assist them in presenting their claim. The same letter referred the plaintiffs to Article 9, Paragraph J.3 and Article 8, Paragraph 0.3 of their SFIP and stated that the policy required them to submit a proof of loss within sixty days.

Nick Miller, an adjuster for Charter, arrived to inspect plaintiffs' property on September 25, 1999.[4] Miller examined the property and noted that extensive flooding had occurred. According to plaintiffs they also showed Miller that in the part of the house built over a concrete slab, rather

---

several pages, and filed a substitute and complete version of the motion on October 31, 2001.

2. In the motion to dismiss, the defendant asserts that the government did not waive sovereign immunity to allow for the recovery of attorney fees and costs or to permit a jury trial, things prayed for in plaintiffs' complaint. In their response, the plaintiffs indicate that they do not oppose the granting of NFIP's motion with respect to these contentions and these parts of defendants motion will be granted as uncontested.

3. These facts have been taken from the briefs of the parties and the documentation submit-

ted in support of those briefs. The parties present very similar facts, but when differences arose, I considered the facts in the light most favorable to the plaintiffs as the nonmoving party.

4. The defendant states that Miller inspected the Petersens property on September 23, 1999, and the plaintiffs claim the inspection took place September 26. While I do not consider this dispute material, I have used the date supported by other evidence in the record, the preliminary report completed by Miller, indicating that he examined the premises on September 25, 1999.

than the basement, the storm had washed away soil, leaving a three feet void between the slab and the soil line. Miller allegedly told plaintiffs they needed to hire an engineer and present the report to NFIP if they wished to make a claim for that damage. After his inspection, Miller estimated the contents damages at $41,152.11, well in excess of the policy limits, and the structural damages at $73,869.68. After receiving Miller's preliminary report on October 7, 1999, NFIP sent the Petersens a check in the amount of $7000 as an advance payment. Miller completed his final report on November 16, 1999 and Charter sent a copy to plaintiffs the following day. That report did not include a claim for the erosion damage under the concrete slab. In the time period from October through December, the Petersens claim that they repeatedly tried to contact Miller with concerns about their proof of loss and the claim concerning the soil void. While no one answered many of their inquiries, at times they spoke with Miller or a customer service representative at Charter who told them they would be able to supplement their initial proof of loss.

In a letter sent on December 8, 1999, NFIP extended the 60 day proof of loss filing period to January 14, 2000. Later in December, plaintiffs submitted their own estimates for repairs to Charter and admit that these estimates did not include a claim for the erosion damages under the concrete. Charter then told plaintiffs that the format they used did not match the one used by them or by NFIP so they could not accept them. Because their deadline for filing was rapidly approaching, on January 3, 2000, the Petersens then signed and submitted the proof of loss form prepared by Miller. Though they contested the loss figures calculated by Miller, he assured them they could supplement their claim at a later time.

After some confusion about forwarding the claim form on to NFIP, Charter sent the form, and defendant received it on February 3, 2000. NFIP then sent the Petersens a check in the amount of $66,869.68 for the property damage and another for $11,600 for the contents damage. The Petersens accepted this payment without complaining about or contesting the amount.

In April 2000, allegedly in reliance on Miller's assertions that they could file supplemental claims, the Petersens contacted a geotechnical engineer, Alfred McClymont, who inspected the property and issued a report on May 8, describing the concrete slab's condition as "very unsafe" and recommending replacement. Anna Petersen wrote to Charter on May 30, 2000, included the report, and noted that it was for items not included in the original report. She also indicated that despite repeated attempts to contact him, Nick Miller had not responded to her calls and asked someone else at the company to provide her with the information necessary for making her supplemental claim. The engineer's report did not include an estimated cost of repair. Charter then requested permission from NFIP to investigate the claim and hire a different engineer, Sinan Jawad, to inspect the property. After completing his exam on June 5, 2000, Jawad indicated he believed the erosion under the concrete slab was a long term problem, not caused by the September 16, 1999 flood. By letter of July 8, 2000, NFIP informed the plaintiffs that they denied their claim concerning the erosion damage on the grounds that the damage had not been caused by the flooding. The letter also indicated that plaintiffs had one year from the date of the letter to file an appeal of the denial in federal court. On November 15, 2001, McClymont, the engineer hired by the

Petersens, filed an addendum to his original report attributing the damage to the September 1999 flood. Plaintiffs filed this action on July 5, 2001.

*Legal Standard*

Defendant offers two separate grounds in support of their motion to dismiss. NFIP claims that this court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and that plaintiffs have failed to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, the defendant argues that it is entitled to judgment as a matter of law under Federal Rule of Civil Procedure 56.

A party may challenge the subject matter jurisdiction of the court on either facial or factual grounds. *See Gould Electronics Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000). Though in a facial attack, the court may consider only the allegations of the complaint and any documents attached to it, in a factual attack, the court may consider evidence proffered outside of the pleadings. *Id.* On a 12(b)(1) motion to dismiss, the plaintiff carries the burden of "persuading the court that it has jurisdiction." *Turicentro, S.A. v. American Airlines, Inc.,* 152 F.Supp.2d 829, 831 (E.D.Pa.2001). On the other hand, when deciding a 12(b)(6) motion, a court must consider the factual allegations in the complaint and the reasonable inferences that can be drawn from the complaint in the light most favorable to the nonmoving party. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Under Rule 12(b)(6) a court should grant the motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The trial court determines whether there are issues with regard to material facts that warrant a trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As with a motion to dismiss, when making its determination, the court must consider the facts in the light most favorable to the nonmoving party and give that party the benefit of the reasonable inferences that may be drawn from those facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Sempier v. Johnson and Higgins,* 45 F.3d 724, 727 (3d Cir.1995) (en banc). Summary judgment is appropriate where the court finds that the record "could not lead a rational trier of fact to find for the nonmoving party, [and] there is no 'genuine issue for trial.'" *Matsushita* 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted). Parties generally file motions for summary judgment after completion of discovery. When a party moves for summary judgment before the nonmoving party has had an opportunity to develop the record through the discovery process, a court should exercise caution in granting a motion for summary judgment. *See Folger Adam Security, Inc. v. DeMatteis/MacGregor JV,* 209 F.3d 252, 263 (3d Cir.2000).

Though defendant contends that the Petersens' failure to file a proof of loss deprives this court of jurisdiction, courts

have determined that where NFIP denies a plaintiff's claim under the SFIP and the plaintiff institutes suit in federal court within the one year limitations period set by 42 U.S.C. § 1072, a court has jurisdiction over the claim. *See Reeves v. Guiffrida*, 756 F.2d 1141, 1143 (5th Cir., 1985). Therefore, I must evaluate the defendant's motion under either Rule 12(b)(6), failure to state a claim on which relief can be granted, or as a motion for summary judgment under Rule 56. Here the parties have submitted evidence in addition to the pleadings in the form of verifications, correspondence, reports, and declarations. Accordingly, I must treat the motion as one for summary judgment. *See* Fed. R.Civ.P. 12(b) ("If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment"). In order to prevail on their motion then, the defendant must demonstrate that there is no genuine issue of material fact and no rational trier of fact could find in favor of the Petersens. Because NFIP has sustained this burden, I will grant defendant's motion for summary judgment.

*Discussion*

■ "It is well settled that federal common law governs the interpretation of the [Standard Flood Insurance Policy] at issue here." *Linder and Assoc., Inc. v. Aetna Cas. and Sur. Co.*, 166 F.3d 547, 550 (3d Cir.1999). The federal government may set conditions for recovery on a federal insurance policy, including a SFIP, and once established by regulation, these requirements carry the same force and effect as law. *See La Casa Del Convaleciente v. Sullivan*, 965 F.2d 1175, 1178 (1st Cir. 1992). In order to recover under a SFIP, an insured must demonstrate that he or she has followed all requirements prescribed by law and courts have strictly construed these requirements. *See Messa*

*v. Omaha Prop. & Cas. Ins. Co.*, 122 F.Supp.2d 523, 530 (D.N.J.2000). The SFIP form itself advises insureds that they "may not sue us to recover money under this policy unless you have complied with all the requirements of the policy." 44 C.F.R. Pt. 61, App.A(1), at Art. 9, Section R (1996). Further, the form provides that the terms of the policy cannot be altered or waived "without the express written consent of the Federal Insurance Administrator." SFIP, Art. 9, Section D (1996). As one of the requirements for recovery, a claimant must submit a signed and sworn proof of loss to the NFIP within 60 days after the loss. This form should briefly explain the cause of the damage, the value or replacement costs of the loss, and the amount of that due under the insurance policy. *See* SFIP, Art. 9, Section J(3) (1996).

■ The defendant argues that the Petersens failed to submit a timely proof of loss for their claim concerning the erosion under the concrete slab. While the May 30, 2000 letter written by Mrs. Petersen constitutes a claim for supplemental damages, the plaintiffs never submitted a proof of loss for this erosion damage by including an estimate of the value or replacement cost attributable to those damages. Because the plaintiffs failed to satisfy a condition precedent to recovery, and do not dispute their failure to do so, as a matter of law, they cannot prevail on their claim. Though they admit their noncompliance, the Petersens raise two arguments as to why their failure to comply with the requirement should not bar their claim. First, they argue that equitable estoppel prevents the government from using their failure to file a proof of loss to bar their claim, and second, they contend that because the NFIP denied their claim on substantive grounds, they waived the proof of loss requirement and cannot now invoke it.

Examining the facts in the light most favorable to the Petersens and drawing all reasonable inferences from them, I find that neither of these arguments can defeat NFIP's motion for summary judgment.

### 1. *Estoppel*

■■■■ A party may rely on the equitable doctrine of estoppel to avoid injustice, but the burden of the proof falls to the party invoking the doctrine. *See Messa*, 122 F.Supp.2d at 532. When invoking estoppel, a party must show a knowing misrepresentation by another party and reasonable reliance on that misrepresentation, causing a detriment to them. *See id.* ( *citing Heckler v. Cmty. Health Serv.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)). Additionally, when a party seeks to invoke estoppel against the government, he or she must show "some affirmative misconduct on the part of the government officials." *Fredericks v. Comm'r of Internal Revenue*, 126 F.3d 433, 438 (3d Cir. 1997).

Here plaintiffs assert that they relied on the representations of agents of the NFIP, Nick Miller and a customer service representative at Charter Adjustment, stating that they could file supplemental claim after filing their original proof of loss. In support of their claim of reasonable reliance, plaintiffs make two different arguments. The Petersens' first argue that their reliance was reasonable because defendant did not tell them it denied their claim because of the failure to file a proof of loss, and denied it· on substantive grounds instead. This argument, however, is irrelevant to the issue of reliance. By the time plaintiffs gave NFIP notice of their supplemental claim and NFIP denied that claim, the 60 day period and any extension of time the defendant granted for the original filing had long since passed. Any reliance plaintiffs placed in

Miller's representations took place well before the plaintiffs received notice that NFIP rejected their supplemental claim and cannot provide a basis for their estoppel claim.

Next plaintiffs argue that they reasonably relied on Miller's statements because the SFIP does not explicitly forbid supplemental claims. This contention also fails to support an estoppel claim against the defendant. Though the SFIP makes no reference to either permitting or banning supplemental claims, it does very clearly state that a proof of loss must be filed within sixty days of the alleged loss. *See Ambassador Beach Condo. Ass'n, Inc. v. Omaha Prop. and Cas. Ins. Co.*, 152 F.Supp.2d 1315, 1316 (N.D.Fla.2001). Additionally, the agreement specifically disavows any oral modification of the terms of the insurance contract, requiring that NFIP consent to any modification or waiver in writing. *See* SFIP, Art. 9, Section D (1996). In light of these written terms of the SFIP, the Petersens cannot rely on inferences that might be drawn from terms not included in the agreement. Plaintiffs "had abundant opportunity to become aware of the proof of loss statement requirement and Defendant's inability to waive or change that requirement without written approval." *Messa*, 122 F.Supp.2d at 532. The defendant is not estopped from demanding compliance with the proof of loss requirement because plaintiffs cannot satisfy the reasonable reliance element of an estoppel claim "as they must be presumed to know the law requiring the return of a proof of loss statement." *Id.*

### 2. *Waiver*

■■■■ The express terms of the SFIP also prevent the plaintiffs from raising a successful claim that the defendant waived the proof of loss requirement in their case. The Petersens base their waiver claim on

the investigation undertaken by NFIP after it received their supplemental claim and the report of McCloskey. In their opinion, because defendant chose to pursue the claim by sending their own engineering to the cite, and subsequently denied the claim on the grounds that the September 1999 flood had not caused the damage, the defendant permanently waived the proof of loss requirement. Though the actions of the defendant do seem a bit puzzling when examined in light of the subsequent denial of the claim and the ensuing litigation, I need not explain NFIP's conduct in order to decide this motion. Actions taken by an insurer to process or settle a claim do not waive the proof of loss requirement. *See Ambassador Beach*, 152 F.Supp.2d at 1317. The express terms of the SFIP indicated that any modification or surrender of rights under the contract must be made in writing. Because the plaintiffs have not presented any evidence that the defendant issued such a writing and the law requires me to interpret the requirements of the contract strictly, I cannot find that the defendant excused the plaintiffs from complying with the proof of loss requirement or waived the right to demand compliance prior to litigating their claim. *See Messa*, 122 F.Supp.2d at 530.

3. *Supplemental Claims*

In the instant case, the Petersens made a claim pursuant to their policy and the NFIP satisfied that claim when it tendered payment based upon the representations made by plaintiffs in their proof of loss. Plaintiffs claim they were aware of the erosion damage almost immediately after the flood on September 16, 1999. Even if they had only discovered the damage after filing their original proof of loss and receiving payment, the law does not excuse them from complying with the SFIP's requirements. Because they accepted payment on their claim and did not contest the amount of settlement at that time, plaintiffs may not make an additional claim. *See Ambassador Beach*, 152 F.Supp.2d at 1317; *Messa*, 122 F.Supp.2d at 530; *Dogwood Grocery, Inc. v. S.C. Ins. Co.*, 49 F.Supp.2d 511, 513 (W.D.La.1999).

*Conclusion*

While the parties dispute minor facts in this case, no dispute exists concerning the set of facts material to its disposition. The Petersens acknowledge that they have not filed a proof of loss regarding their supplemental claim. The express terms of the SFIP required the plaintiffs to file a proof of loss within 60 days of the damage. Though that original 60 day time frame was extended in writing by the defendant to January 14, 2000, plaintiffs have failed to produce any other written modification of the terms of the policy. The plaintiffs have also failed to meet the requirements to estop the defendant from raising the proof of loss issue because they have not shown that they reasonably relied on the misrepresentations of an agent of NFIP. Additionally, nothing on the record supports the contention that the defendant waived its right to subsequently raise the proof of loss requirement as an affirmative defense when it conducted some investigation of plaintiffs' supplemental claim. Because the plaintiffs have failed to satisfy a statutory requirement for making their claim, I will grant the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### *ORDER*

**AND NOW,** this day of May 2002, it is **ORDERED** that the defendant's motion to dismiss, or in the alternative for summary judgment (docket entries # 4 and # 6) is **GRANTED.**